IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK04-83112 |
| ) | A05-8034 |
| JOHN PATRICK RAYNOR, ) | |
| ) | CH. 7 |
| ) | |
| Debtor(s). ) | |
| DOWNEY LAND LIMITED, a California ) | |
| Limited Partnership, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JOHN PATRICK RAYNOR, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Trial was held in Omaha, Nebraska, on February 6 and 7, 2008, regarding the Amended Complaint, Filing No. 24. Jerrold L. Strasheim appeared for the plaintiff and Robert Craig and Jenna B. Taub appeared for the debtor/defendant. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

## BACKGROUND

Downey Land Limited ("Downey") sued debtor/defendant Raynor to obtain a determination that its judgment is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) and/or (B). As discussed below, the debt shall not be excepted from discharge.

## FACTS

Downey owns real estate near Los Angeles, California, on which a building is located that is designed to be used as a fitness center. The building was leased to an operator which owned the equipment and operated the fitness center. The operator entered into an agreement to sell the business to an entity created specifically to purchase and operate the fitness center. Debtor/defendant John Raynor was one of four individuals involved with the purchasing entity.

In order to close the purchase, the purchasing entity needed an assignment of the seller's interest in the lease. When Downey's representative, Mr. Greenbeck, learned of the business structure of the entity purchasing the business, he required each of the individuals involved in the purchase to provide a financial statement and a personal guarantee of the lease. Each of the individuals did provide a personal financial statement and did execute a written guarantee of the lease. The lease was then assigned to the purchasing entity.

The fitness center was not a money maker and the building needed extensive repairs both at the time the purchase closed and during the operation of the business by the purchasing entity.

Revenue from the operation was insufficient to cover the overhead, make the necessary repairs and service the debt, or to make timely lease payments. Within three years from the purchase date, the purchaser closed the business and abandoned the premises to the landlord.

Downey sued the lease guarantors in the California courts. It obtained judgments against each of them for several hundred thousand dollars based upon breach of the lease and "waste" because of the building's condition at the time the leasehold was abandoned.

To collect on the judgment, Downey transcribed it to Douglas County, Nebraska, and began garnishment proceedings against Mr. Raynor. Garnishment caused Mr. Raynor to file a Chapter 11 bankruptcy case in this district, which was eventually converted to Chapter 7.

Downey filed this adversary proceeding, and paragraph 9 of the amended complaint, filing No. 24, alleges that

> Raynor obtained [rights under the lease] for [the purchasing entity] by false pretenses, false representations, and/or actual fraud, by overstating his net worth, assets, or both, and by understating, concealing, and not disclosing his liabilities including contingent unliquidated liabilities, by acting in concert with insider co-guarantors . . . and aiding and abetting such insider co-guarantors, to overstate their net worths, their assets, or both, and to understate, conceal, and not disclose their liabilities, including . . . their unliquidated and contingent liabilities.

In addition, the amended complaint alleges, at paragraph 10, "Raynor obtained such property and credit through use of a statement in writing respecting his financial condition as of February 8, 1999 (and that of his wife) showing a net worth of $4,387,500 upon which Downey reasonably relied."

At paragraph 11 of the amended complaint, Downey asserts that "[s]uch statement in writing respecting Raynor's financial condition was materially false in that it fabricated assets, fabricated values of assets, and unstated, concealed, and did not disclose Raynor's liabilities including contingent, unliquidated liabilities."

At the start of trial, plaintiff withdrew the allegations concerning "acting in concert with co-guarantors and aiding and abetting," etc.

The amended complaint asks for a judgment determining that Raynor's judgment debt, including interest, costs and attorney fees, be determined to be non-dischargeable under 11 U.S.C. § 523(a)(2).

Filing No. 72 is the financial statement Mr. Raynor provided to Mr. Greenbeck. It is headed "John and Maureen Raynor Financial Statement as of February 8, 1999." It lists cash on hand, personal assets such as furniture and fixtures and automobiles, a personal residence, and various investments. As for liabilities, it lists the home loan and other loans. It does not allocate ownership of any of the assets to either John or Maureen Raynor individually. It does, however, make clear that the dollar amount used for certain investments, including Waste-Water, Inc., and Casad Offshore Services are the amounts invested, not the market value of the investments. The financial statement shows a net worth of $4,193,500. In addition, the financial statement shows personal income of $400,000.

When evaluating the financial statement of Mr. Raynor, Mr. Greenbeck assumed that the

assets listed on the financial statement were jointly held, or, at the very least, that both John and Maureen Raynor had some interest in each of the assets. The assumption was incorrect. The personal residence was and still is owned by Mrs. Raynor. The investments identified as "marketable stocks" in the amount of $445,000 were and are owned by Mrs. Raynor.

## CONCLUSIONS OF LAW AND DISCUSSION

Sections 523(a)(2)(A) and (a)(2)(B) are mutually exclusive. First Nat'l Bank of Olathe v. Pontow, 111 F.3d 604, 608 (8th Cir. 1997).

One claim for relief in the complaint is under 11 U.S.C. § 523(a)(2)(A). That section provides that a debt will not be discharged if it is for money, property, services or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. The trial concentrated totally on the actual financial condition of Mr. Raynor when he submitted his written financial statement. Therefore, this section cannot apply and that portion of the complaint dealing with false pretenses, false representation or actual fraud must be decided in favor of Mr. Raynor.

The other portion of the complaint concerns 11 U.S.C. § 523(a)(2)(B) and that section disallows a discharge of a debt to the extent obtained by the use of a statement in writing that is materially false, respecting the debtor's financial condition, and on which the creditor reasonably relied, and that the debtor caused to be made or published with intent to deceive.

To except a debt from discharge under 11 U.S.C. § 523(a)(2)(B), a creditor must prove, by a preponderance of the evidence, that (1) the debtor made (2) a statement in writing (3) respecting the debtor's financial condition (4) which was materially false and (5) made with the intent to deceive, and (6) which was reasonably relied upon by the creditor. Heritage Bank of St. Joseph v. Bohr (In re Bohr), 271 B.R. 162, 167 (Bankr. W.D. Mo. 2001).

a.    "Materially false"

A financial statement is materially false if it "paints a substantially untruthful picture of a financial condition by a misrepresentation of the type which would normally affect the decision to grant credit." Id. Likewise, a financial statement is materially false if it falsely represents the debtors' overall financial condition or has major omissions. Id. In the Bohr case, a financial statement listing real property as an asset was materially false in light of the fact that debtors held only a remainder interest in the property, subject to a life estate, so the interest had no value. Without the real estate, the debtors' net worth dropped from $270,000 to $8,000, so the misrepresentation was material.

The relevant subjective inquiry, although not dispositive, is whether the complaining creditor would have extended credit had it been apprised of the debtor's true situation. Fairfax State Sav. Bank v. McCleary (In re McCleary), 284 B.R. 876, 885 (Bankr. N.D. Iowa 2002). In McCleary, the lender argued that the debtor's financial documents were materially false because they omitted certain outstanding obligations and did not accurately reflect the ownership and value of certain business equipment. The court disagreed, noting that the unlisted debt, a $6,000 balance due on a revolving account with a supplier, was not significant in comparison to the debtor's net expenditures of $448,000 for the first seven or eight months of the year. Moreover, the debtor's failure to provide the bank with details of his obligations for leased equipment was not "substantially untruthful" as the information sought was readily apparent from the face of the documents. The

court opined that "a cursory review of [the profit and loss statement] should have put [the lender] on notice as to potential outstanding lease obligations." McCleary, 284 B.R. at 886.

      b.    "Intent to deceive"

For discharge to be barred, the debtor must have acted with intent to deceive. An intent to deceive does not mean that the debtors acted with a "malignant heart." Bohr, 271 B.R. 162, 169 (quoting Agribank v. Webb (In re Webb), 256 B.R. 292, 297 (Bankr. E.D. Ark. 2000)). A creditor may establish such intent by proving reckless indifference to or reckless disregard of the accuracy of the information in a debtor's financial statement. McCleary, 284 B.R. at 888. Factors to consider include whether the debtor was intelligent and experienced in financial matters, and whether there was a clear pattern of purposeful conduct. Id. (citations omitted). Once the creditor establishes that the debtor had actual knowledge of the false statement, the debtor cannot overcome the inference of the intent to deceive with unsupported assertions of honest intent. Bohr, 271 B.R. at 169. The court in Bohr found intent to deceive based on the debtors' admission that they knew the land did not belong to them and that the financial statements containing information to the contrary were submitted for the purpose of obtaining credit. The inference from those facts was that the debtors intended to deceive the lender. Id.

By contrast, the court in McCleary found no intent to deceive because the bank was so lax in obtaining full disclosure of the debtor's financial situation. "The Bank was content with the limited information it received about Debtor's financial picture. Debtor's failure to provide more relevant and accurate information cannot be interpreted as an intent to deceive in these circumstances." 284 B.R. at 888.

      c.    "Reasonable reliance"

The reasonableness of a creditor's reliance is to be determined in light of the totality of the circumstances. Guess v. Keim (In re Keim), 236 B.R. 400, 402-03 (B.A.P. 8th Cir. 1999) (citing First Nat'l Bank of Olathe v. Pontow, 111 F.3d 604, 610 (8th Cir. 1997)). Among the factors to consider is "whether there were any 'red flags' that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations." Sinclair Oil Corp. v. Jones, 31 F.3d 659, 662 (8th Cir. 1994) (quoting Coston v. Bank of Malvern (In re Coston), 991 F.2d 257, 261 (5th Cir. 1993) (en banc)).

In Keim, the court ruled that the creditor could not have reasonably relied on handwritten and incomplete financial statements. The creditor extended credit primarily because the debtors listed a one-sixth ownership interest in a building. The creditor did not verify the ownership interest, or the value of the interest or of the building. The B.A.P. agreed with the bankruptcy court that no reasonable person would have been able to discern the debtors' financial condition solely from the financial statement provided, and reproved the creditor for not asking for proof of the debtors' ownership interest, not conducting a title search, not procuring an appraisal, and not even verifying the existence of the building. Keim, 236 B.R. at 403 n.2.

In Bohr, supra, the court found that the lender reasonably relied on the debtors' purported ownership of real estate listed in their financial statements, although the debtors actually held only a remainder interest. A creditor is not required to assume that a debtor is lying or misrepresenting facts in a financial statement. Bohr, 271 B.R. at 168. "While a minimal investigation would most likely have revealed the true ownership of the real estate and thereby exposed the falsity of the

financial statements, there were no 'red flags' for the Bank that would have triggered such an investigation" until the debtor informed the bank more than a year after the last financial statement that they did not actually own the property outright. Id. at 168-69. At that point, the bank immediately investigated the debtors' assets and learned the truth.

> In McCleary, supra, the court concluded that the lender failed to protect its own interests.
>
> The Bank, in this case, abandoned its normal financial disclosure procedures, it relied upon financial information provided by a third party [the debtor's prior lender], and it showed a lack of critical curiosity about the documents that were produced. Many, if not all, of the grievances made by the Bank at this time could have been easily remedied by obtaining a full financial statement in the beginning. Under all of these circumstances, this Court must conclude that any reliance upon the information provided by Debtor was not reasonable.

284 B.R. at 888.

With regard to the "materially false" prong, the plaintiff suggests that failure to identify a contingent liability represented by one or more lawsuits which were pending at the time the financial statement was submitted makes the financial statement incomplete and therefore false. According to the plaintiff, the failure to provide information on the lawsuit is material because had it been identified, Mr. Greenbeck would have had the opportunity to inquire about the lawsuit and make a determination of whether the lawsuit affected Mr. Raynor's financial wherewithal and ability to make good on his guarantee. The problem with that argument is that one of the two lawsuits on file at the time of the issuance of the financial statement was for injunctive relief to stop a corporate merger of a corporation for which Raynor served on the board of directors. Mr. Raynor testified that he believed it had been settled by a written settlement agreement entered into by the parties several months before he provided the financial statement. The settlement agreement is in evidence and there is no evidence to suggest Raynor's belief concerning the status of the lawsuit was unreasonable at the time. The second lawsuit was for an appraisal of the value of the corporate stock, not for monetary relief. Because of the type of lawsuits that were pending, even if Mr. Greenbeck had become aware of the lawsuits through disclosure by Mr. Raynor, there is no reason to believe he would have been concerned about Mr. Raynor's financial ability to deal with the guarantee. Mr. Greenbeck said that he had not, in 30 years, ever had the need to evaluate a lawsuit against a proposed tenant or guarantor and was unable to state what he would have done in this case had he been made aware of the lawsuits. The financial statement was not materially false as a result of Raynor's failure to list them.

The other part of the argument by the plaintiff concerning the "materially false" prong is that Mr. Raynor submitted a financial statement in his name and his wife's name. Mr. Greenbeck did not request clarification by Mr. Raynor and testified that he had assumed that the financial statement presented in such a form meant that Mr. Raynor owned an interest in at least one-half of the value of the assets listed. However, he did not ask Mr. Raynor anything about his financial statement. In addition, the plaintiff asserts that listing various investments on the financial statement, not at an estimated market value, but at the amount of money Mr. Raynor had invested in the particular asset, was misleading and materially false. However, the financial statement made it relatively clear that that is exactly what Mr. Raynor was doing and Mr. Greenbeck did not ask Mr. Raynor for any clarification. Mr. Greenbeck admits that when he evaluated all four of the financial statements, he discounted private company investments and really looked to cash flow represented by annual income to determine if any or all of the guarantors would be able to make good on the

guarantee. He concluded that Mr. Raynor could make good on it because he was earning $400,000 a year and had very little debt. The financial statement was not materially false because Raynor included his wife's assets and the invested amounts in private companies rather than the estimated market value.

With regard to the "reasonable reliance" prong, it is clear that Mr. Greenbeck did not rely upon the assets listed on Mr. Raynor's financial statement, because they were not liquid. Although he testified that it appeared from the financial statement that Mr. Raynor was able to borrow the funds necessary to deal with the guarantee, on cross-examination he admitted that he made such a determination only the day before trial and it did not enter into his consideration of the financial statement at the time it was submitted. He did rely on Raynor's stated annual income, rather than the stated assets.

The plaintiff asserts that submitting a financial statement in the form that Mr. Raynor did could only be because he intended to deceive Mr. Greenbeck. There is no direct evidence that Raynor intended to deceive Mr. Greenbeck and one does not necessarily need to infer such an intent to deceive based on the format of the financial statement. Mr. Raynor testified that he had submitted financial statements in the same form for years to Mid City Bank and the plaintiff even offered into evidence some unsigned financial statements which were in the same form both before and after the financial statement which is the subject matter of this lawsuit was submitted to Mr. Greenbeck. One could just as easily infer that he submitted financial statements in that form because such format did actually represent the financial condition of the family unit. Anybody granting credit or agreeing to an assignment of a lease could have checked on the title to the house, the bank account in which the cash supposedly was deposited, the name of the publicly traded securities and therefore the value, and could have requested financial statements on each of the closely held investments. Mr. Greenbeck did none of the above and he didn't even validate the annual income of Mr. Raynor by asking for a tax return.

Finally, plaintiff asserts that the financial statement must have been false when given because when plaintiff attempted to collect on the judgement none of Raynor's individually owned assets, such as the private company investments, were in existence and there is little, if any, property in Raynor's bankruptcy estate. However, the financial statement was given in 1999. The collection efforts began in 2004. Raynor testified by deposition several months before trial, at the first meeting of creditors, and at trial, that between 1999 and 2004, his investments were lost through market forces, state or federal agency rulings, and pledging assets as collateral for loans on additional investments that went bad. There is no contrary evidence, and even Mr. Greenbeck agreed when his deposition was taken that he was not claiming the assets listed on the financial statement did not exist when the statement was provided. Greenbeck Dep. 130:10-14 (Fil. #117).

The plaintiff has not proved each of the elements required under 11 U.S.C. § 523(a)(2) and therefore judgment shall be entered against the plaintiff and the debt shall be discharged.

DATED:    April 30, 2008

BY THE COURT:

/s/ Timothy J. Mahoney
Chief Judge

Notice given by the Court to:
    *Jerrold L. Strasheim
    Robert Craig
    Jenna B. Taub
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.